UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LYLE ORR, <br><br> Plaintiff, <br><br> v. <br><br> COMMANDER OF WHITLEY COUNTY JAIL, <br><br> Defendant. | CAUSE NO. 1:24-CV-438-CCB-SJF |

OPINION AND ORDER

Lyle Orr, a prisoner without a lawyer, claims he is being denied constitutionally adequate medical treatment for chest pain. (ECF 4.) He is proceeding solely on a claim against the Commander of the Whitley County Jail ("Commander") for prospective injunctive relief. (*Id.*) He moves for a preliminary injunction requiring that jail staff immediately take him to an outside cardiologist and provide other treatment for chest pain. (ECF 5.) The court ordered a response to the motion by the Commander, which has now been filed. (ECF 15.)

The court notes that when Orr filed this case he was being held at the jail as a pretrial detainee, but public records reflect that on December 3, 2024, he was convicted of a criminal offense and sentenced to a term of incarceration.[1] *See State v. Orr*, No. 92D01-2408-CM-000994 (Whitley Sup. Ct. closed Dec. 3, 2024). Because he is now

---

[1] The court is permitted to take notice of official court records. *See* Fed. R. Evid. 201. According to the Warden, Orr is scheduled to be released from the custody of the jail on December 28, 2024. (ECF 15 at 2.)

convicted and serving a sentence, his claim for prospective injunctive relief is governed by the Eighth Amendment. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

## FACTS

Orr is 58 years old and was booked into the Whitley County Jail on August 16, 2024. (ECF 15-1; ECF 15-2.) He has a history of cardiac problems and high blood pressure and has received treatment at Parkview Medical Center ("Parkview") for these issues. (ECF 15-2 at 86-120.) Orr's arrest stemmed from an altercation with his girlfriend, and before he was brought to the jail on August 16, police took him to the emergency room at Parkview for evaluation of scratches and other injuries. (ECF 15-2 at 88.) The examining physician noted that Orr was "somewhat of a poor historian" and "refuses to answer many of my questions," and instead was arguing with police officers about the events leading to his arrest. (*Id.*) The physician's examination revealed normal cardiovascular and lung function. (*Id.* at 89.) He was treated for some bruises and abrasions and released. (*Id.* at 89-91.)

Since his arrival at the jail in August, he has been seen and evaluated by jail medical personnel for chest pain as well as for complaints about his back, ears, nose, teeth, skin, and toenail. (*Id.* at 3-88.) The day after his arrival, he was seen by a nurse at the jail but would not let her check his vital signs. He reported to her that he was hoping if he refused all medical care, he would get released from the jail on his own recognizance. (*Id.* at 25.) He reported a history of hypertension but did not know what medications he was on. (*Id.* at 30.) The nurse called Orr's pharmacy and confirmed his current medications, which included aspirin, high blood pressure medication,

cholesterol medication, and nitroglycerin as needed for chest pain.[2] She then consulted with the nurse practitioner, who directed: "[P]lease restart medications and let him know he is only hurting himself by not taking his medications," and that "not taking care of himself can result in death, delay in care, etc." (*Id.* at 25.) He was presented with a medical refusal form which outlined the risks of refusing his medications, but he refused to sign it. (*Id.* at 54.)

The following day, jail officers reported to the nurse practitioner that Orr had refused to eat for two days and was telling jail staff that they should "call the coroner." (*Id.* at 25.) He continued to refuse his medications and also refused a blood pressure check. With the assistance of correctional staff, a nurse took his blood pressure and noted it as normal. (*Id.* at 26.) Later that day he was placed on a "suicide/hunger strike watch" at the request of the jail's mental health provider. (*Id.* at 25, 54-56.)

On August 19, he was seen and evaluated by a nurse due to a complaint about his ear. On August 20, he was seen by the jail's mental health care provider. (*Id.* at 21.) The same day, he was seen again by the nurse. (*Id.* at 26.) She noted that he was "not cooperative and does not wish to see provider." (*Id.* at 15.) He was again presented with a medical refusal form, which advised him of the risks of refusing his medication and regular blood pressure checks, but he refused to sign it. (*Id.* at 57.) He refused his medications again on August 21. (*Id.* at 26, 60-64.).

---

[2] The doctor who prescribed this directed that Orr should place one nitroglycerine tablet "under tongue every 5 minutes as needed for chest pain" and if the pain did not subside after three tablets to "call 911." (ECF 15-2 at 6, 87.)

3

On August 22, he had a meeting with his lawyer and thereafter stated that he would start taking his medications and also allowed his vital signs to be checked. (*Id.* at 26.) His blood pressure was noted as elevated. (*Id.*) The nurse, who was aware that Orr had a history of cardiac issues, asked him to sign a consent form so that jail medical staff could obtain his records from his cardiologist at Parkview. (*Id.*) He did so. (*Id.*) However, he told the nurse that if he needed cardiac care he did not want to be seen at Parkview because "they suck," and instead wanted to be taken to Lutheran Hospital. (*Id.* at 26-27.) He was told that in the event of an emergency he would be taken to the nearest hospital. (*Id.* at 27.) The nurse consulted with the nurse practitioner, who instructed her to restart his medications. Orr also raised an unrelated concern about his lower back, for which he was provided over-the-counter medication. (*Id.* at 26.) He denied any other medical issues or complaints at that time. (*Id.*)

On August 26, Orr refused to take his blood pressure medication. (*Id.* at 67.) The nurse practitioner took his vital signs and found that his heart rate and rhythm were regular and that his lungs were clear. (*Id.* at 27, 30.) On August 29, Orr took his morning medications and allowed his blood pressure to be checked by a nurse. (*Id.* at 27-28.) It was noted as 134/67. (*Id.* at 28.) The nurse practitioner reviewed and adjusted Orr's medications. (*Id.*)

On August 30, Orr was seen by both a nurse and the jail's mental health care provider. (*Id.* at 28.) He refused his medications on that date. (*Id.*) It was also noted that he was refusing regular jail meal trays and demanding a special diet consisting of a

4

specific brand of pre-packaged sandwiches. (*Id.* at 28.). The nurse consulted with the nurse practitioner, who advised that he could eat the regular food trays at the jail. (*Id.*) He remained on suicide watch as of that date because he was still refusing to eat meals and take all of his medications, and had also made statements to correctional staff about dying. (*Id.* at 22.).

On August 31, Orr refused to allow medical staff to check his blood pressure. (*Id.* at 70.) The following day, he refused to take his medication and again refused to allow staff to check his blood pressure. (*Id.* at 71.) On September 2, he again refused to take his medication and to allow medical staff to check his blood pressure. (*Id.* at 71-72.)

On September 3, Orr submitted a written request for medical care for unrelated problems with his ear and sinuses, and was seen and evaluated by medical staff later that afternoon. (*Id.* at 6-7, 75.) On September 9, he submitted a written request for treatment for a dental problem, but when the nurse went to see him, he refused to talk to her. (*Id.* at 76.) On September 10, he was seen and evaluated by a nurse practitioner for the issues with his ear and sinuses. (*Id.* at 30.) That same date, he was prescribed a soft diet for dental pain. (*Id.* at 28.)

On September 14, Orr refused to take his medications. (*Id.* at 72-74.) He was seen on September 17 for the problem with his ears. (*Id.* at 28.) The following day, he wrote another complaint about his ears and was scheduled to see the nurse practitioner on September 20. (*Id.* at 78.) In the interim, he wrote a complaint stating that he had not yet

5

been given a copy of his cardiac records from Parkview.[3] (*Id.* at 79.) He did not report any current complaints or problems related to his heart in that complaint. (*Id.*) When he wrote this complaint, jail staff had not yet received any records from Parkview. (*See id.* at 86.)

Orr was seen by the nurse practitioner on September 20 for ear and sinus problems. He denied having chest pain, palpitations, or shortness of breath. (*Id.* at 17.) The nurse practitioner evaluated and treated the ear and sinus problems. (*Id.*) On September 24, Orr was evaluated and treated for complaints of a dry nose and nose bleeds. (*Id.* at 29, 80.) On October 1, he complained that his teeth were swollen and needed to be pulled, and he was later seen by a dentist. (*Id.* at 81.)

On October 2, he was seen by a nurse after reporting chest pain and asked to be given a nitroglycerin pill, which was on his list of approved medications. (*Id.* at 10-11.) He was given a nitroglycerin pill and his chest pain resolved. His blood pressure was checked and found to be within normal limits. (*Id.* at 11.) The nurse consulted with the nurse practitioner, who recommended that Orr increase his intake of fluids. (*Id.* at 10-12.)

On October 8, Orr was seen by a nurse after he complained of "slight chest pain," which he described as pain with movement on "left side rib." He asked to have his vital signs taken. (*Id.* at 29.) His vital signs were taken and found to be within normal limits.

---

[3] He also inquired about a "do not resuscitate" order he had signed while at an Indiana Department of Correction facility years earlier, but was told this order only applied at that facility. (ECF 15-2 at 78.)

The nurse reported that Orr was "laughing and talking" while she was taking his vital signs. (*Id.*)

On October 17, the jail received Orr's records from Parkview. (*Id.* at 29, 86-117.) The records described the evaluation and treatment he had received since 2022 for cardiac issues and confirmed his current medications. (*Id.* at 101-109.) They reflected that he was most recently seen in May 2024.[4] (*Id.*) These records were reviewed by his medical provider at the jail on October 23, and she also directed that they be shared with Orr. (*Id.* at 86, 117.)

In the ensuing two weeks, Orr submitted requests and was seen for an ingrown toenail, problems with his ears, and a rash on his leg. (*Id.* at 12-14, 83-84.) He also requested and was granted a return to a regular diet because he reported that his teeth were no longer bothering him. (*Id.* at 85.)

On November 19, Orr was seen by a nurse after complaining to correctional officers that he thought his blood pressure was high. (*Id.* at 29.) He was given a dose of blood pressure medication. His blood pressure was checked and found to be within normal limits. (*Id.*)

## ANALYSIS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of

---

[4] The records from his most recent visit to Parkview do not contain specific instructions about what follow-up was required. A record from 2022 indicates that he was following up annually for his cardiac issues. (ECF 15-2 at 110.)

7

persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions— "those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief

8

to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove an Eighth Amendment violation, a prisoner must demonstrate (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Negligence or medical malpractice does not establish an Eighth Amendment violation. *Walker*, 940 F.3d at 965. Instead, courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Id.* (citation and internal quotation marks omitted).

The records before the court reflect that Orr has serious medical needs. They also reflect that medical staff at the jail have diligently responded to Orr's many requests for care and taken reasonable steps to address his chest pain and other issues. They are aware of Orr's history of cardiac problems, obtained the records from his cardiologist, are monitoring his blood pressure, and are providing him with medications. Although he believes he should be taken to an outside cardiologist, his own subjective assessment of his medical needs is not enough to establish an Eighth Amendment violation. *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019). The medical records further reflect that Orr has made things more difficult for providers at the jail and has at times compromised his health by refusing to eat, take his medications, and have his vital signs checked. The Eighth Amendment does not entitle him to make decisions that negatively impact his health and then blame medical staff for the consequences. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (inmate should not "be permitted to engineer an Eighth Amendment violation").

Based on the present record, Orr has not demonstrated a likelihood of success in proving that medical staff are acting with deliberate indifference to his medical needs, nor has he demonstrated that he will suffer irreparable injury if he is not granted immediate relief before this case is resolved.[5] He is not entitled to the extraordinary remedy of a preliminary injunction.

---

[5] Some of the events underlying the complaint occurred before Orr was convicted, but even if the more lenient Fourteenth Amendment standard applied to his claim, he has not demonstrated a likelihood of success in proving that he received treatment that was objectively unreasonable under the circumstances. *See Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 828 (7th Cir. 2022). As outlined in this order, the care he has received appears quite reasonable.

As a final matter, Orr moves for leave to proceed in forma pauperis (ECF 7), but he was already granted leave to proceed in forma pauperis in this case based on an earlier motion. (ECF 2, 3.) His duplicative motion will be denied as unnecessary.

For these reasons, the plaintiff's motion for a preliminary injunction (ECF 5) is DENIED, and his duplicative motion for leave to proceed in forma pauperis (ECF 7) is DENIED as unnecessary.

SO ORDERED on December 11, 2024

                                        s/ Cristal C. Brisco
                                        JUDGE
                                        UNITED STATES DISTRICT COURT